# United States Court of Appeals

## For the Seventh Circuit

Chicago, Illinois 60604

**NOTICE OF ISSUANCE OF MANDATE**

DATE:   December 21, 2004

TO:     John M. Waters
        United States District Court
        Central District of Illinois
        Suite 218
        201 S. Vine Street
        U.S. Courthouse
        Urbana, IL   61802-3369

FROM:   Gino J. Agnello, Clerk

RE:     04-2161
        Hansen, Donna v. Cannon, Robert
        03 C 2073, Michael P. McCuskey, Chief Judge

**FILED**
DEC 27 2004
JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, IL

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any. A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.

[ ] No record filed
[X] Original record on appeal consisting of:

**ENCLOSED:**                                        **TO BE RETURNED AT LATER DATE:**
[ ]    Volumes of pleadings                          [4]
[ ]    Loose pleadings                               [ ]
[ ]    Volumes of transcripts                        [ ]
[ ]    Volumes of exhibits                           [ ]
[ ]    Volumes of depositions                        [ ]
[ ]    In Camera material                            [ ]
[ ]    Other_____          [ ]

       Record being retained for use                 [X]
       in Appeal No.********  04-3318   ********

       Copies of this notice sent to:    Counsel of record
       [ ]    United States Marshal
       [ ]    United States Probation Office

**NOTE TO COUNSEL:**
If any physical and large documentary exhibits have been filed in the above-entitled cause, they are to be withdrawn ten days from the date of this notice. Exhibits not withdrawn during this period will be disposed of.

Please acknowledge receipt of these documents on the enclosed copy of this notice.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

       Received above mandate and record, if any, from the Clerk, U.S.
       Court of Appeals for the Seventh Circuit.

Date: _____12/27/04_____         __s/V. Ball_____
(1071-120397)                        Deputy Clerk, U.S. District Court

# United States Court of Appeals

For the Seventh Circuit

Chicago, Illinois 60604

JUDGMENT- WITHOUT ORAL ARGUMENT

Date: November 29, 2004

BEFORE:    Honorable WILLIAM J. BAUER, Circuit Judge

Honorable RICHARD A. POSNER, Circuit Judge

Honorable FRANK H. EASTERBROOK, Circuit Judge

No. 04-2161

DONNA HANSEN and ROBERT W. HANSEN,
    Plaintiffs - Appellants
v.

ROBERT CANNON, SERGEANT AUTERMAN, CHARLES WOLFE, et al.,
    Defendants - Appellees

Appeal from the United States District Court for the
Central District of Illinois
No. 03 C 2073, Michael P. McCuskey, Judge

    The judgment of the District Court is VACATED as to the grant of summary judgment for Wolfe on the claim that he violated the Fourth Amendment by participating in the unlawful seizure of the Hansens' property and REMAND the case for further proceedings on that claim. In all other respects the judgment is AFFIRMED. The above is in accordance with the decision of this court entered on this date.

(1060-110393)

UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53



# United States Court of Appeals

For the Seventh Circuit
Chicago, Illinois 60604

Submitted November 2, 2004[*]
Decided November 29, 2004

Before

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. FRANK H. EASTERBROOK, *Circuit Judge*

No. 04-2161

| | |
|---|---|
| ROBERT HANSEN and DONNA HANSEN,<br>*Plaintiffs-Appellants*, | Appeal from the United States District Court for the Central District of Illinois |
| v. | No. 03-2073 |
| ROBERT CANNON, et al.,<br>*Defendants-Appellees*. | Michael P. McCuskey,<br>*Judge*. |

## ORDER

This action under 42 U.S.C. § 1983 arises from the court-ordered eviction of Robert and Donna Hansen from their home in Tilton, Illinois. In essence the Hansens contend that Tilton's mayor and police chief, along with two Vermillion County deputy sheriffs, seized or facilitated the seizure of personal property from an adjacent lot also owned by the Hansens but not covered by the eviction order. In a previous appeal we vacated the grant of summary judgment for the defendants on grounds of qualified immunity. *Hansen v. Cannon*, No. 01-3076, 26 Fed. Appx. 555, 2001 WL 1637660 (7th Cir. Dec. 18, 2001). On remand the district court again

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

granted summary judgment for the defendants, in part on the basis of qualified immunity. We affirm in part and vacate and remand in part.

The Hansens owned adjoining Lots 8 and 9 in a section of a Tilton subdivision. A house and two garages sit on Lot 9, and another garage sits alone on Lot 8. After the Hansens mortgaged Lot 9—but not Lot 8—and defaulted, a circuit court in Vermillion County ordered the sheriff to take possession of the lot and turn it over to the lender. The order describes Lot 9 by number and address, 121 West Fourth Street. The order makes no mention of Lot 8 at 119 West Fourth. Through intermediaries the lender contracted with Rick Woodard to remove the Hansens' personal property from the site.

On November 5, 1997, Deputy Sheriff Larry Lillard left an eviction notice under the door at 121 West Fourth while the Hansens were away. Woodard's crew then began work, and during that day and the next removed property from both the house and garages on Lot 9 and the garage on Lot 8. On November 6 a towing company hauled five vehicles from Lot 8; a sheriff's deputy with the initials "T.D." was involved in the towing and signed a tow report that day. At least three of those vehicles apparently ended up in the possession of the sheriff's office. (Woodard's crew also took the Hansens' exotic birds, but Robert Hansen later conceded that the birds were likely seized from Lot 9, not Lot 8 as the Hansens alleged in their complaint.) Deputy Lillard would later admit having reservations about whether the garage on Lot 8 was part of the foreclosed real estate, but in an affidavit he explained that an unidentified Tilton police officer assured him (he did not say when) that the house and garages were all on one parcel. Woodard testified by deposition that Mayor Conrad Wantland told him (on "the day of the eviction," although he did not say which day) that there was just one property. Woodard said he also spoke to Chief Charles Wolfe the same day he spoke to Mayor Wantland, though he did not say about what.

The Hansens were not present until the third day, November 7, when they met their lawyer, Richard Kurth, at the scene. Upon their arrival the Hansens told Woodard's employees that they could not remove any property from Lot 8. That prompted a call to Tilton police, and Chief Wolfe responded. Kurth and Robert Hansen explained to Chief Wolfe that the order did not apply to Lot 8. Robert Hansen testified in his deposition that Wolfe told one of Woodard's employees to continue removing property from Lot 8 and threatened to arrest the Hansens if they interfered. Deputy Sheriff Daniel Auterman arrived shortly afterward; he was acting on the orders of Deputy Sheriff Robert Cannon, who was concerned about safety because the Hansens apparently owned guns. Auterman told the Hansens that Cannon, who was not then present, was in charge. Robert Hansen's own

No. 04-2161                                                                                          Page 3

testimony is conflicting about whether Auterman echoed Wolfe's warning that they would be arrested if they did not leave.

The Hansens lingered and tried to explain that the order applied only to one of the lots, and Wolfe responded, "That's not what we were told." Meanwhile, attorney Kurth departed to obtain proof that the order did not encompass Lot 8. It is undisputed that Kurth also telephoned Deputy Cannon and advised him that Woodard's employees were taking property from the wrong lot. During discovery Cannon testified that he responded to Kurth's call by contacting an unnamed sheriff's deputy at the scene, who told him that someone "associated with the Village of Tilton" had confirmed that there was only one parcel of real estate. But none of the parties tells us what if anything Cannon did with this information. What is clear is that Kurth returned to Lot 8 after speaking with Cannon and apparently convinced Woodard's employees to stop removing property from Lot 8, and to unload from their truck anything they had already taken that day.

In the days that followed, the Hansens made minimal effort to retrieve their personal property. Deputy Cannon was the sheriff's employee responsible for disposing of the vehicles towed on November 6. Cannon mailed notices that three of the cars (he insisted that he did not know about the other two) would be sold or destroyed if not retrieved; he addressed the notices for two of the cars to 121 West Fourth Street and the other to the address on the registrations for the vehicle, which named Donna and Kenneth (not Robert) Hansen. The post office returned the notices undelivered. During discovery, though, Hansen admitted that he knew where the cars were stored, and that he did not retrieve them before they were "junked." Hansen also knew where the birds were being kept but did not retrieve them, either.

The Hansens filed suit in November 1999 against Mayor Wantland, Chief Wolfe, and Deputies Cannon and Auterman. Essentially, the Hansens claimed that the defendants violated their Fourth Amendment rights in connection with the seizure of their personal property from Lot 8. After staying discovery, the district court in July 2001 granted summary judgment for all four defendants on the basis of qualified immunity. The court concluded that the defendants could have reasonably believed that the two lots were a single property given their physical appearance and the representation to that effect from unidentified village officials. We held, however, that the record did not support the court's conclusion that the defendants reasonably believed both lots were covered by the order of possession, and that the district court had improperly stayed discovery, which might have resolved questions about what the defendants knew. *Hansen*, 26 Fed. Appx. at 559, 2001 WL 1637660, at *3.

Following our December 2001 remand, the proceedings were marked by delay, mostly attributable to the Hansens. Discovery deadlines were extended, often after they were already missed, and nearly a year after our remand only one deposition—Woodard's—had been taken. Robert Hansen frequently cited his health as cause for delay, and in fact the Hansens avoided being deposed until after a September 2003 order compelling their appearance. For their part Deputies Cannon and Auterman sought sanctions or dismissal under Fed. R. Civ. P. 37 but were unsuccessful.

In October 2003, at the suggestion of the district court, the Hansens accepted assistance from two law students. Shortly afterward the court set an April 2004 trial date and gave the Hansens until mid-March 2004 to depose the defendants. Early in 2004, however, the defendants moved again for summary judgment, and the Hansens responded with a third amended complaint. That complaint includes two counts, the first citing the Fourth and Fourteenth Amendments but alleging only that the defendants seized property from Lot 8 "without due process," and the second alleging that Chief Wolfe and Deputy Auterman had "constructively" seized the Hansens. Read liberally, the first count asserts both a Fourth Amendment claim of unreasonable seizure, *see Soldal v. Cook County*, 506 U.S. 56, 63-69 (1992); *Brokaw v. Mercer County*, 235 F.3d 1000, 1010-11 (7th Cir. 2000); *Ryan v. Ill. Dep't of Children and Family Servs.*, 185 F.3d 751, 764 (7th Cir. 1999), and a Fourteenth Amendment claim for the deprivation of property without due process.

In April 2004 the district court again granted summary judgment for the defendants. The court held that the Hansens' claim that they were denied procedural due process failed because the loss of their property was random and unauthorized, and yet they never disputed the existence of an adequate post-deprivation remedy. Additionally, as to the Fourth Amendment claims concerning the seizure of the Hansens' property and the "constructive" seizure of their persons, the court held that all four defendants enjoyed qualified immunity. While the motion was pending, the Hansens' law student representatives deposed the defendants, but the depositions were not transcribed before the order issued and were not a part of the summary judgment record.

Before turning to the Hansens' arguments, we must decide whether these defendants had sufficient personal involvement in the eviction to be liable under § 1983. *See Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003). The line here is one between passivity and active participation in the eviction. Officials who simply fail to protect citizens from private actors cannot be liable under § 1983. *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189 (1989). And if private actors seize property, the police will not be liable under § 1983 just for failing to order its release. *Johnson v. City of Evanston*, 250 F.3d 560, 563 (7th Cir.

2001). Instead, liability attaches only when officials intervene and actively participate in the seizure. *Id.* In the specific context of an eviction, we have held that the mere presence of police would not be sufficient to establish their personal involvement. *Soldal v. County of Cook*, 942 F.2d 1073, 1074-75 (7th Cir. 1991) (en banc), *rev'd on other grounds*, 506 U.S. 56 (1992). In fact, even when police officers prevent a landowner from exercising a common law right to resist an eviction, the officers still are not necessarily "actual participants" in the eviction. *Id.* at 1075. Nevertheless, allegations of concerted action between government officials and private actors may be enough to establish the state actors' personal involvement, as will active participation in the seizure. *Id.*; *Johnson*, 250 F.3d at 563.

We think Chief Wolfe's personal involvement was sufficient. Not only was he present on November 7 to order the Hansens to leave or be arrested, but, according to Robert Hansen, Wolfe went so far as to direct Woodard's employees to continue moving property out of the garage on Lot 8 after they had stopped. Likewise, we think that Deputy Cannon participated significantly in the conduct giving rise to the Hansens' complaint. Cannon was the vehicle identification officer who disposed of the Hansens' cars, and as we noted in our 2001 decision, Robert Hansen went to Cannon's office on November 9 to retrieve the cars and was told by Cannon that he was a "little guy" who would have to pay towing and storage fees when Cannon felt like releasing the cars. Even so, because another deputy who is not a defendant signed the tow report when the cars were seized, Cannon's involvement is limited to events occurring after the seizure, which, as we shall see, is important.

In contrast, Deputy Auterman's personal involvement is inadequate to incur liability. Auterman at most ordered the Hansens to leave the area on November 7, and the evidence that he did even that much is conflicting; Robert Hansen—the only source of evidence concerning Auterman's participation—testified both that the deputy told the couple to leave and that he didn't. Likewise, Mayor Wantland's involvement cannot support liability. He apparently told Woodard that the Hansens owned just one property, and he may even have done so without adequate investigation, but he had no involvement in the seizure of their property from Lot 8. Accordingly, Wantland and Auterman should have been dismissed for lack of personal involvement in any violation of the Hansens' rights.

That brings us to the Hansens' arguments. The first is their procedural due process claim—for which there is no hope. The Hansens argue that, because the defendants were executing a court order, their actions could not have been "random and unauthorized," *see Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 541 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327, 330 (1986), and so they were entitled to a predeprivation hearing. But the

Hansens have always insisted that their property was removed from Lot 8 *despite* the eviction order, not because of it, and eviction without a court order is a good example of "random and unauthorized" action. *See Soldal*, 942 F.2d at 1075-76. Moreover, the Hansens did not plead that they had an adequate post-deprivation remedy, *see Buckley v. Fitzsimmons*, 20 F.3d 789, 798-99 (7th Cir. 1994), nor do they argue here that such a remedy was unavailable, so their due process claim cannot survive. *Doherty v. City of Chicago*, 75 F.3d 318, 323-24 (7th Cir. 1986); *Greco v. Guss*, 775 F.2d 161, 169 (7th Cir. 1985); *cf. Johnson*, 250 F.3d at 562 (holding that defendant police officer, who had seized and held plaintiff's car, stated plaintiff's constitutional due process claim for him by contending that plaintiff had no remedy in state law). Because we have rejected the notion of "continuing seizure" under the Fourth Amendment, *see Lee v. City of Chicago*, 330 F.3d 456, 460-63 (7th Cir. 2003), and because the only evidence of Cannon's personal involvement relates to disposal of the cars after their seizure, Cannon drops out of the suit with the due process claim.

Next, the Hansens argue that the defendants violated their rights by unreasonably seizing property from Lot 8 without a court order; they rely in part on our last decision, in which we explained that seizing property that is not subject to a court order is a presumptive violation of the Fourth Amendment. *See Soldal v. Cook County*, 506 U.S. at 63-69; *Johnson*, 250 F.3d at 563. Of course, the only defendant still on the hook is Chief Wolfe, and even assuming that he may have participated in a Fourth Amendment violation, he may still be entitled to qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982). The Hansens, however, argue that the record in this case is too spotty to grant summary judgment on the basis of qualified immunity.

When the defense of qualified immunity is raised, there are two threshold questions the court must answer. First, on the facts taken in the light most favorable to the plaintiff, was there a violation of a constitutional right? *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, was that right clearly established? *Id.* Of course, as we said in the Hansens' previous appeal, seizing property without a court order is a presumptive violation of the Fourth Amendment that was clearly established at the time of these events. *Hansen*, 26 Fed. Appx. at 558, 2001 WL 1637660, at *2. Nonetheless, Chief Wolfe would still enjoy qualified immunity if he "could have reasonably believed" that the seizures from Lot 8 were constitutional despite the exclusion of that lot from the eviction order. *Perry v. Sheahan*, 222 F.3d 309, 316 (7th Cir. 2000). The question is not whether he should have believed that his actions were reasonable, but whether he *could* have, because qualified immunity protects all but patently incompetent officials and those who wilfully break the law. *Hunter v. Bryant*, 502 U.S. 224, 228-29 (1991). Wolfe would therefore prevail unless there is evidence that he knew Lot 8 was separate from Lot 9, or if suspicious

circumstances would have caused any reasonable officer to question his or her actions. *Flatford v. City of Monroe*, 17 F.3d 162, 170 n.9 (6th Cir. 1994).

In 2001 when the district court granted summary judgment for defendants on the basis of qualified immunity, it decided that the defendants had acted reasonably because the two lots were "not clearly distinct properties" and because the defendants had justifiably relied on information given to them by unidentified informants. But we vacated the district court's order because the record did not support a conclusion that the defendants reasonably believed that the order applied to both lots. First, the defendants pointed to no evidence to suggest it was reasonable to think the order applied to both lots given that the lots were divided by a fence and survey stakes, and uniformly sized and laid out on a grid. Second, the defendants' affidavits were silent about the order of possession itself. And third, the defendants could point to nothing in the record to clarify on what, or whose, information they purported to rely. These issues in mind, we directed the court on remand at least to allow limited discovery to clarify "whether the defendants had a reasonable belief about the scope of the order of possession." *Hansen*, 26 Fed. Appx. at 559, 2001 WL 1637660, at *3.

Now, three years later, the parties have not even completed the limited discovery we envisioned, and the record remains all but unchanged. Nonetheless, the district court once again entered summary judgment for the defendants on the basis of qualified immunity. This time, the court explains that it based its order entirely upon new deposition testimony by the Hansens about the appearance of the property, which revealed that there were flowers across the front of both lots, that the fence separating the lots was shorter than the fences on either side, and that there was no street address on the garage on Lot 8. With the Hansens' description in mind, the court decided that it was reasonable for the defendants to have thought of Lots 8 and 9 to be the same lot. We disagree. It remains undisputed that the two lots are uniformly sized, that they sit on a grid where every other lot is also of equal size, and that they were divided by a fence and survey stakes; therefore, there were clearly two lots—even though the description the Hansens gave might lead a reasonable official to believe the same family owned and maintained both lots. Thus, we cannot say that it was reasonable for Chief Wolfe to ignore the Hansens' and their lawyer's protests that the order applied only to Lot 9 and to order the eviction to continue. *Id.*; *see Flatford*, 17 F.3d at 170 n.9. Furthermore, the analysis should focus on what Wolfe knew because—although qualified immunity turns on an objective test—the question is whether a reasonable official knowing what Wolfe knew could have believed his actions to be lawful. *See Anderson v. Creighton*, 483 U.S. 635, 641 (1987). Yet again, just like in 2001, nothing in the record tells us what Wolfe knew about the scope of the order. Indeed in 2001, we held that we could not decide whether the defendants had acted reasonably without

knowing who their unnamed informants were or what information those informants gave them, *Hansen*, 26 Fed. Appx. at 559, 2001 WL 1637660, at *3, but we still do not know the basis for Chief Wolfe's statement, "That's not what we were told." For all these reasons, we once again vacate the district court's order granting summary judgment on the basis of qualified immunity.

This time, rather than allowing Chief Wolfe another chance to press his qualified immunity defense before trial, we think that trial should proceed. Of course our order today does not establish Wolfe's liability; we have decided only that the facts viewed in the light most favorable to the Hansens would establish a violation of a clearly established Fourth Amendment right. *See Saucier*, 533 U.S. at 201. Essential facts still need to be established at trial, including whether (and when) Wolfe, as Robert Hansen testified, ordered Safeguard to continue moving property out of the garage on Lot 8.

Finally, we note that the Hansens make no argument about their "constructive seizure" claim, and we deem it waived. *Hentosh v. Heman M. Finch Univ. of Health Scis./Chicago Med. School*, 167 F.3d 1170, 1173 (7th Cir. 1999). We also note that no claim included in the third amended complaint against Wolfe in his official capacity can survive our earlier decision because any such claim is really against the Village of Tilton, *Brandon v. Holt*, 469 U.S. 464, 471-73 (1985), the dismissal of which we have already upheld. *Hansen*, 26 Fed. Appx. at 559, 2001 WL 1637660, at *3.

Accordingly, we VACATE the grant of summary judgment for Wolfe on the claim that he violated the Fourth Amendment by participating in the unlawful seizure of the Hansens' property, and REMAND for further proceedings on that claim. In all other respects the judgment is AFFIRMED.