E-FILED
Friday, 25 March, 2005   11:43:10 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| ROBERT HANSEN and DONNA HANSEN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 03-CV-2073 |
| | ) | JURY DEMAND |
| CHARLES WOLFE, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION IN LIMINE**

NOW COME the Plaintiffs, ROBERT HANSEN and DONNA HANSEN, by and through their legal representatives, Brian Dampier and Scott Kording, and state as follows for their Response to Defendant's Motion in Limine:

**I.    THE OPINIONS OF PLAINTIFFS' EXPERT WITNESS, PHYLLIS ROTH, WILL ASSIST THE TRIER OF FACT IN DETERMINING THE HEALTH-RELATED DAMAGES OF PLAINTIFF ROBERT HANSEN.**

Defendant's Motion in Limine seeks the exclusion of testimony or evidence from Plaintiffs' expert opinion witness, Phyllis Roth. The Court should deny Defendant's motion as it pertains to Phyllis Roth's expert opinion testimony and evidence.

Phyllis Roth qualifies as one with "specialized knowledge" sufficient to qualify her as an expert opinion witness within the meaning of Rule 702 of the Federal Rules of Evidence. See Fed. R. Evid. 702. Rule 702 reads as follows:

> If scientific, technical, or *other specialized knowledge* will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based

1

>  upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Id. (emphasis added).

According to the Advisory Committee's Notes for Rule 702, "[w]hether the situation is a proper one for the use of expert testimony is to be determined on the basis of assisting the trier." 56 F.R.D. 183, 282 (1973). The Advisory Committee goes on to explain that "[t]here is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." Id. (quoting Ladd, Expert Testimony, 5 Vand. L. Rev. 414, 418 (1952) (internal quotation marks omitted).

Rule 702 seeks only to exclude opinions that are "unhelpful." Id. Moreover, the Advisory Committee expressly notes that "within the scope of the rule are not only experts in the strictest sense of the word, e.g., physicians, physicists, and architects, but also the large group sometimes called 'skilled' witnesses." Id. The Advisory Committee's notes further reveal that rejection of an expert's testimony is "the exception rather than the rule." Id. To this end, the Seventh Circuit has counseled that "the district judge's inquiry should be 'flexible.'" Ancho v. Pentek Corp., 157 F.3d 512, 515 (7th Cir. 1998) (quoting United States v. Vitek Supply Corp., 144 F.3d 476, 485 (7th Cir. 1998)).

Plaintiffs' expert opinion witness possesses specialized knowledge of Plaintiff Robert Hansen by way of her position as his primary care provider from January 1998 through 2001. Ms. Roth's experience as Plaintiff Robert Hansen's primary care provider puts her in the unique position of having specialized knowledge of his general health for the period before and after the

2

unconstitutional seizure of Plaintiffs' personal property from 119 W. Fourth Street, Tilton, Illinois.  In addition, Ms. Roth's specialized training and education in several different areas of adult medicine related to the conditions from which Plaintiff Robert Hansen suffers would assist the trier of fact to understand the evidence of Plaintiff Robert Hansen's medical records.

Beyond the specialized knowledge that she commands in this particular case pertaining to Plaintiff Robert Hansen's medical condition, Ms. Roth's educational level and training also can serve as a reliable source of information for the trier of fact.  Ms. Roth has earned a master's degree in adult health.  (Roth Dep. at 94).  Accordingly, Ms. Roth is qualified to perform physical examinations and identify health problems.  (Roth Dep. at 94).  Ms. Roth also possessed certification as an advanced practice nurse, which certification attests to Ms. Roth's authorization and training to diagnose health problems and prescribe medicines and treatments.  (Roth Dep. at 94).  Ms. Roth's training in endocrinology expands her expertise to the treatment of diabetes, a condition from which Plaintiff Robert Hansen suffers.  (Roth Dep. at 95).  Although Ms. Roth is not a medical doctor, she has provided instruction to other nurses on various medicine-related topics.  (Roth Dep. at 93).

Ms. Roth's expert opinions will assist the trier of fact because of her specialized knowledge, education, and training.  Defendant's Motion in Limine adopts a citation to Ms. Roth's deposition advanced by former defendants Auterman and Cannon.  This citation to pages 78-79 of Ms. Roth's deposition claims that her disclosed opinions are "common knowledge to the average layperson."  <u>See</u> Part I.A of Auterman and Cannon Mot. in Limine.  Defendant's citation fails to reference Ms. Roth's subsequent qualifying statement:  "Common knowledge isn't always so common."  (Roth Dep. at 79).

3

Defendant's Motion in Limine also claims that Plaintiffs did not timely disclose Ms. Roth's expert opinions to Defendant. However, on January 30, 2004, Plaintiffs' counsel served upon Defendant a copy of Plaintiffs' Disclosure of Expert Witness, a portion of which read as follows:

> Expert's opinion shall address plaintiff Robert Hans[e]n's medical condition *both before and after November 7, 1997*, and in relation to events alleged in Plaintiffs' Third Amended Complaint. By reference to Plaintiff's medical records, already in possession of Defendants, expert will show a decline in plaintiff's health and emotional well-being as a direct result of the alleged activities of all Defendant. Upon completion, a copy of Expert's report will be provided to Defendants.

Once completed, Ms. Roth's expert witness report was one page long and not complex. Plaintiffs' counsel forwarded Ms. Roth's report to Defendant's counsel prior to Ms. Roth's deposition.

In addition, Defendant's adoption of the argument advanced by former defendants Auterman and Cannon that the timeframe for disclosing Ms. Roth's testimony "prevented the Defendants from finding an expert of their own to contradict any opinions offered by Ms. Roth." See Part II.C of Auterman & Cannon Mot. in Limine. Defendant has made no attempt to disclose any expert opinion witness in the last calendar year. Thus, Defendant cannot claim that he is prejudiced by any delay in obtaining Ms. Roth's short, straightforward opinion testimony.

## II.     PLAINTIFFS ROBERT AND DONNA HANSEN SHOULD NOT BE BARRED FROM OFFERING TESTIMONY ABOUT THE CAUSE OF THEIR PHYSICAL AND EMOTIONAL DAMAGE.

Defendant's Motion in Limine seeks the exclusion of testimony or evidence from either plaintiff about the cause of their physical and emotional damage. The Court should deny Defendant's motion as it pertains to Plaintiffs' lay opinions about the physical and emotional

4

damage they suffered as a result of the unconstitutional seizure of their personal property from 119 W. Fourth Street, Tilton, Illinois.

Defendant cites Fed. R. Evid. 702 for the proposition that Plaintiffs cannot testify as expert witnesses. Defendant erroneously relies on Rule 702.

Plaintiffs do not intend to offer expert testimony pursuant to Fed. R. Evid. 702. Instead, Fed. R. Evid. 701 governs Plaintiffs' testimony about the physical and emotional damage they suffered. Plaintiffs clearly are qualified to testify about how their health was before, during, and after the unlawful seizure of their personal property in November 1997. Although Plaintiffs are not qualified to opine about the medical causes of their conditions, Plaintiffs certainly are permitted to testify about what and how they felt before and after their constitutional rights were violated. See Fed. R. Evid. 701.

Rule 701 authorizes Plaintiffs to give their opinions about how they perceived and responded to the seizure of their personal property. Id. This testimony would be "rationally based on the perception of the witness[es,] . . . helpful to a clear understanding of the witness[es]' testimony or the determination of a fact in issue, and . . . not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Id. Accordingly, Plaintiffs should not be barred from offering their lay opinions and perceptions about their physical and emotional damages, as such testimony falls clearly within the ambit of Fed. R. Evid. 701.

Defendant also adopts the citation of former defendants Auterman and Cannon to Pearson v. Ramos, 237 F.3d 881 (7th Cir. 2001). See Part II of Auterman & Cannon Mot. in Limine. In Pearson, the Seventh Circuit held that a prison inmate was unqualified to testify that prison guards' withholding of outdoor exercise from the inmate caused the inmate's teeth to fall out.

5

Pearson, 237 F.3d at 886. The Seventh Circuit expressly found that there existed "no credible evidence" of any actual harm to the inmate. Id. The Pearson court also noted that no expert opinion testimony established a link between denial of outdoor exercise and the inmate's gums. Id.

The instant case is factually distinguishable, and Pearson should not control the Court's resolution of this issue. Unlike the Pearson inmate, Plaintiffs do not intend to hold their testimony out as expert causation evidence. Moreover, unlike in Pearson, there is substantial evidence of the harm Plaintiffs' suffered from the trampling of their constitutional rights, and Plaintiffs have disclosed expert opinion testimony that can establish a causal link between Plaintiff Robert Hansen's injuries and the botched eviction he endured.

### III. PLAINTIFFS SHOULD NOT BE BARRED FROM INTRODUCING OTHER RELEVANT EVIDENCE OF WHICH DEFENDANT SEEKS EXCLUSION.

Defendant's Motion in Limine seeks exclusion of so-called "improperly obtained evidence"; evidence of training, custom, or policy; evidence of the value of personal property unlawfully seized from Plaintiffs; and reference to "other alleged incidents or problems" between Plaintiffs and the Village of Tilton. The Court should deny Defendant's motion as it pertains to these items.

#### A. "Improperly Obtained Evidence"

Defendant seeks exclusion of evidence Plaintiffs obtained through alleged subpoenaing documents or alleged *ex parte* meetings with Village of Tilton officials. Defendant's motion fails to state specifically the evidence to be excluded. Consequently, Plaintiffs cannot advance arguments for why the Court should deny Defendant's request since Plaintiffs do not know to

6

what evidence Defendant refers. Therefore, the Court should not enter any order barring evidence allegedly obtained through improper means without both requiring Defendant to specify the evidence he seeks to exclude and permitting Plaintiffs to respond to requests for the exclusion of *specific* evidence.

### B. Training, Custom, or Policy

Defendant argues that the Court should exclude evidence regarding the custom, policy, practices, or training of the Village of Tilton, the Tilton police department, or the Vermilion County Sheriff's Office. Defendant grounds his request in the dismissal of Vermilion County and the Village of Tilton as defendants in this action.

Defendant mischaracterizes the purpose for which Plaintiffs intend to offer evidence of the training, custom, or policies of local government agencies. Plaintiffs will not offer this evidence to implicate Vermilion County or the Village of Tilton. Rather, Plaintiffs intend to offer this evidence to address issues of reasonableness raised by Defendant. Defendant has raised an affirmative defense of qualified immunity, which necessarily entails an examination of the reasonableness of Defendant's actions. Furthermore, in response to Plaintiffs' claim of unreasonable seizure of property in violation of the Fourth and Fourteenth Amendments, Defendant has argued that any seizure that occurred was not unreasonable. See Wolfe & Wantland Mot. for Summ. Judg.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." See, e.g., Berry v. Deloney, 28 F.3d 604, 607 (7th Cir. 1994) (quoting Fed. R. Evid. 401). If evidence tends to make a witness' testimony more or less credible, then

7

the evidence is relevant.  Id.  Logically, therefore, evidence of training or custom is relevant when determining the reasonableness of Defendant's actions.

Exploring Defendant's particularized knowledge at the time of the alleged constitutional violation is necessary for the trier of fact to assess the reasonableness of Defendant's conduct. The training of a police officer or municipal employee is an important component of particularized knowledge.  Furthermore, customs within municipalities or law enforcement agencies exist to ensure employee compliance with the law and to shield these entities from liability.  Actions departing from a custom or standard may tend to show unreasonableness.  For example, if the Village of Tilton has developed a custom precluding the involvement of the Chief of Police in eviction proceedings, then participation by the Chief suggests unreasonableness.

When offered for the purpose of addressing the reasonableness of Defendant's actions, and not for addressing municipal liability, evidence of training, custom, policy, or procedures is relevant.  Therefore, the Court should not exclude such evidence.

C. **Valuation of Plaintiffs' Personal Property**

Defendant argues that Plaintiffs should be barred from offering evidence of the value of personal property unlawfully removed from Plaintiffs' garage located at 119 W. Fourth Street, Tilton, Illinois.  The Court should deny Defendant's motion pertaining to the valuation of Plaintiffs' property and give no credence to Defendant's claim that Plaintiffs' testimony about the value of their personal property would be speculation.

Defendant cites no authority for the proposition that Plaintiffs cannot offer their informed lay opinions, or other competent evidence, about the value of the goods unconstitutionally seized from Plaintiff's storage garage.  However, the Seventh Circuit has held that the opinion

testimony of qualified witnesses is admissible to prove the value of personal property when such testimony is necessary for a fair determination of its value. See, e.g., Nat. Fire Ins. Co. v. Reiner, 22 F.2d 671, 672 (7th Cir. 1927). In Reiner, the Seventh Circuit upheld valuation testimony given by a layperson whose personal property had been destroyed. Id. The court held as competence evidence the informed lay opinion about the value of personal property based upon the cost of the property and how long it had been used, as well as a conclusory lay opinion about the "sound value" of the property lost. Id. Ultimately, the Seventh Circuit found the Reiner plaintiff competent to opine about the value of her destroyed personal property, relying on the following legal precept: "The owner of an article, whether he is generally familiar with such values or not, ought certainly to be allowed to estimate its worth." Id. (quoting Wigmore on Evidence (2d ed.) § 716); accord Wigmore on Evidence (3d ed.) §716.

The "great weight" of authority maintains "the doctrine that an owner of a chattel is qualified by reason of that relationship alone to give his estimate as to its value." 37 A.L.R.2d 967, § 2[b]. This authority bears out a uniform principle:

> It is universally acknowledged that opinion testimony of qualified witnesses is admissible to prove the value of personal property of all kinds when such testimony is necessary for a fair determination of its value, the only real controversy involving the question of the competency or qualification of the witness by whom such testimony is offered.

Id. In some cases, equity and necessity require that property owners be permitted to testify about the value of personal property. See id. After all, if Defendant succeeds in excluding Plaintiffs' testimony about their personal property, then Defendant basically would be rewarded for causing the removal from Plaintiffs' control of not only the all of Plaintiffs' property itself, but also all inventories, lists, and records necessary to determine value precisely.

9

The Court also should note that Plaintiffs have requested leave of court to disclose an additional expert opinion witness with expertise in determining the value of personal property. If the Court grants leave for this disclosure, then Plaintiffs' lay opinions will receive further corroboration from the expert opinion witness.

### D. "Other Alleged Incidents or Problems"

Defendant's Motion in Limine seeks exclusion of "[a]ny information regarding other alleged incidents or problems between the Plaintiffs and the Village of Tilton occurring prior to the incident involved in this case." Defendant claims that such evidence would be irrelevant and "well beyond the statute of limitations." The Court should deny Defendant's request on this issue.

The evidence at trial may show that Plaintiffs have been the proverbial thorn in the side of various Village of Tilton officials, including Defendant. Prior "incidents and problems" between Plaintiffs and the Village of Tilton are not irrelevant; rather, they tend to show an ulterior motive for Defendant's participation in the trampling of Plaintiffs' constitutional rights. Moreover, the frequency with which Plaintiffs and Defendant have interacted through their many years in the Tilton community also partly negates Defendant's claims that he neither threatened Plaintiffs with arrest nor instructed movers to continue moving property out of Plaintiffs' garage after Plaintiffs pointed out the eviction error. Furthermore, past confrontations between Plaintiffs and Defendant may reveal that Defendant possessed actual knowledge, or at least should have known, that 119 W. Fourth Street was a separate property not subject to the eviction order for 121 W. Fourth Street. Although the statute of limitations may have expired on

potential legal claims that Plaintiffs might have had, the underlying incidents nevertheless undercut Defendant's qualified immunity claim.

WHEREFORE, for the foregoing reasons, the Plaintiffs, ROBERT HANSEN and DONNA HANSEN, respectfully request that this Court deny Defendant's Motion in Limine.

Respectfully submitted,

ROBERT HANSEN and
DONNA HANSEN, Plaintiffs

**s/ Scott Kording**
Provisional Counsel under Local Rule 83.5
Counsel for Plaintiffs
C/o Professor J. Steven Beckett
University of Illinois College of Law
504 E. Pennsylvania Avenue
Champaign, IL  61820
Telephone:  (217) 377-1188
Fax:  (217) 244-1478
E-mail:  scott@kording.net

## **CERTIFICATE OF SERVICE**

      I hereby certify that on March 25, 2005, I electronically filed the foregoing *Plaintiffs' Response to Defendant's Motion in Limine* with the Clerk of the Court using the Case Management/Electronic Case Filing system, which will send notification of such filing to the following: John F. Martin, Meachum & Martin, 110 N. Vermilion, Danville, IL 61832.

                                            **s/ Scott Kording**
                                            Provisional Counsel under Local Rule 83.5
                                            Counsel for Plaintiffs
                                            C/o Professor J. Steven Beckett
                                            University of Illinois College of Law
                                            504 E. Pennsylvania Avenue
                                            Champaign, IL 61820
                                            Telephone: (217) 377-1188
                                            Fax: (217) 244-1478
                                            E-mail: scott@kording.net